IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SRE-CHEAPTRIPS, INC., | ) | |
| a Delaware Corp. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CV 09-00622-S-EJL |
| | ) | |
| MEDIA SYNERGY GROUP, LLC, a | ) | **MEMORANDUM ORDER ON** |
| Virginia Limited Liability Company, | ) | **DEFENDANTS' MOTION TO** |
| CHARLES ANTON, an individual, | ) | **DISMISS** |
| and JOHN DOES 1-25 | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before this Court in the above titled matter is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(3). Defendants argue that this Court lacks personal jurisdiction and that venue is improper in Idaho. Plaintiff has responded to the motion asserting that both personal jurisdiction and venue are proper in Idaho. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves a contractual dispute between SRE-Cheaptrips, Inc. ("Cheaptrips"), a discount travel website company incorporated in Delaware with its principal place of business in Ketchum, Idaho, and Media Synergy Group, LLC

("Media"), a Virginia limited liability company that is in the business of providing telemarketing services, and Charles Anton ("Anton"), a citizen of Virginia and the president and CEO of Media Synergy. Cheaptrips and Media entered into a Memorandum of Understanding in November of 2008, which is now the subject of the current lawsuit. The agreement provided for a six week test period for outbound telemarketing services by Media to offer Cheaptrips' membership services to leads provided by Cheaptrips. Cheaptrips' president, John Ferry, alleges that Plaintiff started doing business with Defendants under this test agreement expecting to enter into a more expansive annual agreement after the test period. (Ferry Aff. ¶ 23).

Cheaptrips argues that between November 2008 through September 2009, Media wrongfully solicited and obtained hundreds of thousands of dollars in bad sales by intentionally misrepresenting terms of its sales offers and using improper sales techniques such as failing to provide full disclosure of the material terms of sales, charging multiple sales to the same credit card without authorization, and failing to follow scripts approved by Cheaptrips. Cheaptrips states that it informed Media of its growing concerns of complaints of bad sales coming from Media's call center. Cheaptrips also alleges that Media ignored its complaints and concerns and instead continued to submit bad sales to Cheaptrips for the purpose of fraudulently inducing Cheaptrips to pay Media commissions.

Cheaptrips filed a three-count complaint against Defendants alleging breach of contract, fraudulent misrepresentation, and unjust enrichment. Now before the Court is Defendants' motion to dismiss for lack of personal jurisdiction and improper venue.

**DISCUSSION**

### I.     Legal Standard for Motion to Dismiss Based on Lack of Personal Jurisdiction

Personal jurisdiction over both parties is required before a court may decide a case in controversy.  U.S. CONST. Amend. XIV.  In a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of proof to show that jurisdiction is appropriate and that the Court has personal jurisdiction over the defendants.  Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001);  National Union Fire Insurance Co. v. Aerohawk Aviation, Inc., 259 F. Supp. 2d 1096, 1101 (D. Idaho 2003).   A plaintiff need only establish a prima facie showing of jurisdictional facts to withstand dismissal when, as here, a district court acts on a motion to dismiss without holding an evidentiary hearing. Id; see also Ballard v. Savage, 65 F.3d 1495 (9th Cir. 1995). In addressing a defendant's motion to dismiss for lack of personal jurisdiction, the court must take the plaintiff's uncontroverted allegations in its complaint as true, and resolve factual disputes in affidavits in its favor. Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). However, where a defendant offers evidence in support of its motion, a plaintiff may not simply rest on the bare allegations of its complaint. Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977). Instead, the plaintiff must present facts, by affidavit or otherwise, in response to the defendant's version of the facts. Id.

### II.     Analysis of Motion to Dismiss for Lack of Personal Jurisdiction

Personal jurisdiction over a non-resident defendant is analyzed under a two-part test. Dow Chemical Co. v. Calderon, 422 F.3d 827, 830 (9th Cir. 2005). A court may

exercise either general or specific jurisdiction over a non-resident defendant. The exercise of either type of personal jurisdiction must first, satisfy the requirements of the applicable state long-arm statute, and second, must comport with federal due process. Id. When no applicable federal statute governs personal jurisdiction, as here, the law of the state in which the district court sits shall apply. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

The Idaho long-arm statute, as it relates to this case, enables Idaho courts to exercise personal jurisdiction over any person or company who are engaged in the "transaction of any business within this state" or when a tortious act is committed within the state.  Idaho Code §5-514.  In adopting § 5-514, the Idaho Legislature intended to exercise all the jurisdiction available to the State of Idaho under the Due Process Clause of the United States Constitution. Houghland Farms, Inc. v. Johnson, 803 P.2d 978, 981 (Idaho 1990); see also Lake, 817 F.2d at 1420 (determining federal cases provide guidance in determining whether personal jurisdiction exists). Thus, the Court need only determine whether asserting personal jurisdiction complies with due process.  M.A. Hanna Co., 819 F.Supp. 1464. The Due Process Clause requires a defendant have "certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Media argues that both Media and Anton should be dismissed from the suit for lack of personal jurisdiction.  The Court will examine general and specific jurisdiction for Defendants Media and Charles Anton separately.

### A. Media Analysis

#### 1. General Jurisdiction

In this case, Cheaptrips contends that this Court has both general and specific jurisdiction over Media. General jurisdiction exists over a non-resident defendant if his contacts with the forum state are continuous, systematic, and substantial to approximate physical presence. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-416 (1984). With regard to general jurisdiction, this Court finds both Media's contacts with Idaho are insufficient to confer general jurisdiction. Because Media has never been physically present in the forum, the Court must determine whether any contacts with the forum state are "continuous, systematic, and substantial to approximate physical presence." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-416 (1984).

Cheaptrips contends that Media has made thousands of calls to Idaho residents over the years to solicit the purpose of Plaintiff's services. (Ferry Aff. ¶ 15). Cheaptrips also alleges that Media has placed numerous telemarketing calls to Idaho residents on behalf of other companies such as Total Gym and NASCAR to sell their products. However, none of Cheaptrips' claims arise directly from this contact, and even less so as a result of any calls Media made on behalf of other companies. It appears that all of Media's contacts with Idaho took place over the telephone. "By their very nature, phone calls do not approximate physical presence" and cannot give rise to general jurisdiction. Jones v. Williams, 660 F. Supp. 2d 1145, 1149 (N.D. Cal. 2009). Cheaptrips offers no evidence that Media's conduct constituted "doing business in [Idaho]" as opposed to

merely "doing business with [Idaho]."  <u>CollegeSource, Inc. v. AcademyOne, Inc.</u>, 2009 WL 2705426, at *4 (S.D. Cal. Aug. 24, 2009) (quoting <u>Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.</u>, 223 F.3d 1082, 1086 (9th Cir. 2000)).  <u>See also</u> <u>Gates Learjet Corp. v. Jensen</u>, 743 F.2d 1325, 1331 (9th Cir. 1984) (holding that solicitation of business through visits, telephone calls, and telexes to the forum state did not support general jurisdiction). Thus, because general jurisdiction cannot be established, an analysis of specific jurisdiction is appropriate.

### 2. Specific Jurisdiction

Specific jurisdiction may be exercised over a non-resident when the cause of action arises out of a defendant's contact with, or activities in, the forum state.  <u>Resnick</u>, 283 F. Supp. 2d at 1135 (citing <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 620 (9th Cir. 1991)). Put another way, to be subject to specific jurisdiction, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958)).

It is well established in the Ninth Circuit that three conditions must be met before a court may exercise specific personal jurisdiction over a nonresident defendant: (1) that the non-resident defendant purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct, (2) that the plaintiff's claim arise out of, or result from, the defendant's forum-related activities, and that the (3) exercise of jurisdiction is reasonable. <u>Roth</u>, 942 F. 2d at 620-621; <u>Schwarzenegger</u>, 374

F.3d at 802. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476- 78 (1985).

Regarding the first prong, the Ninth Circuit distinguishes the purposeful availment requirement between tort and contract actions. Schwarzenegger, 374 F.3d at 803. In tort claims, a court applies a "purposeful direction" test. Id. This is an "effects test" which focuses on the forum where the defendant's actions were felt, whether or not the actions themselves occurred within that forum. Id. By contrast, contract cases apply a "purposeful availment" test, requiring a court to examine whether a defendant "'purposefully avail[ed] [him]self of the privilege of conducting activities' or 'consummate[d] [a] transaction' in the forum, focusing on activities such as delivering goods or executing a contract" in that forum. Id. This case sounds primarily in contract. Although one of Cheaptrips' claims sound in tort, all of its claims arise out of Cheaptrips' contractual relationship with the Defendants. Thus, the purposeful availment analysis is appropriate.[1]

---

[1] Although Plaintiff has also pled tort causes of action, this does not alter the fact that the *primary* action sounds in contract. See Boschetto v. Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (applying purposeful availment standard where plaintiff accused internet seller of goods of breach of contract, misrepresentation, and fraud). Notwithstanding this, because Cheaptrips has produced no evidence that Media or Anton knew the activity was directed toward Idaho, Cheaptrips fails to establish that Media's acts were "expressly aimed at the forum state." CollegeSource, Inc., 2009 WL 2705426, at *6 (quoting Menken, 503 F.3d at 1058).

### a. Purposeful Availment

To satisfy the first prong of specific jurisdiction, "[i]t is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are 'purposefully directed' toward forum residents." Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998). Instead, a defendant satisfies the purposeful availment requirement simply if its contacts create a "substantial connection" with the forum state such that the defendant "should reasonably anticipate being haled into court here." CompuServe Inc. v. Patterson, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985), and World-Wide Volkswagen Corp., 444 U.S. at 297).   A defendant purposefully avails itself of a particular forum if its contact with the forum "has created 'continuing obligations' between himself and residents of the forum...." Id. (citation omitted). That is, the defendant must "have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988).

However, jurisdiction is only proper "when the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum state." Burger King v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957) (emphasis in original).   Thus, the Court must analyze "whether the defendant's contacts with [Idaho] are attributable to his own actions or are solely the actions of the plaintiff." Roth, 942 F.2d at 621. Clearly, this purpose is to ensure that a defendant is not haled into a jurisdiction solely because of random,

fortuitous, or attenuated contacts, or of unilateral activity of the other party or a third person. Doe v. Unocal Corp., 248 F.3d 915, 924 (9th Cir. 2001).

Moreover, in a contract case such as this one, the mere existence of a contract with a party in the forum state does not constitute sufficient minimum contacts for jurisdiction. Burger King, 471 U.S. at 478.   Rather, a court must examine the circumstances surrounding the contract to determine whether the defendant purposefully established minimum contacts with the forum.  Burger King, 471 U.S. at 479.  In doing so, the court must looks at factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine if the defendant's contacts are " substantial" and not merely "random, fortuitous, or attenuated." Id. at 479-480 (internal quotations omitted).

The Supreme Court has held that "[p]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities." Burger King, at 473 (internal quotes omitted). This Court also recognizes that the Ninth Circuit has held that "if a defendant directly solicits business into the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws." Resnick, 283 F. Supp. 2d at 1139 (quoting Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 840 (9th Cir. 1986)).   However, in this case, there is no evidence of any resulting transactions from Media's solicitations. Absent any evidence that Media's telephone calls resulted in the transaction of any business, the Court finds that telemarketing phone calls to Idaho

residents does not confer specific jurisdiction. <u>See</u> <u>CollegeSource, Inc.</u>, 2009 WL 2705426 at *5 (holding that California's visits to defendant's website without evidence that the visits resulted in any business transactions was insufficient to confer specific jurisdiction.)   Simply put, Plaintiff has not provided any evidence of "resulting transactions" with Idaho residents.    Thus, while direct solicitations resulting in transactions *may* constitute the "transaction of business sufficient to invoke the benefits of the state," the Court finds that such facts are not present in this case.

The Ninth Circuit has held that personal jurisdiction does not exist over a party whose only contacts with the forum were telephone calls and a letters directed into the state. <u>Peterson v. Kennedy</u>, 771 F.2d 1241, 1261 (9th Cir. 1985). <u>Peterson</u> states that the "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." <u>Peterson</u>, 771 F.2d at 1262 (quoting <u>Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica</u>, 614 F.2d 1247, 1254 (9th Cir.1980)).[2]

This case is undoubtedly a close call as phone calls were made to Idaho residents. Cheaptrips makes several arguments as to why jurisdiction in Idaho is proper.   First, it argues that it began doing business with Media from Idaho and that Cheaptrips signed the contract in Idaho.   In its supporting affidavit, Cheaptrips states that "the contract was negotiated, drafted and signed *by Cheaptrips* in Idaho." (Ferry Aff. ¶ 4) (emphasis

---

[2] This case may be distinguishable in circumstances where there were multiple transactions rather than a single shot deal.  However, in the present case, not only is there no evidence of multiple transactions, there is no evidence of a single travel contract with an Idaho resident resulting from Media's telemarketing calls.

added). And in its memorandum, Cheaptrips argues that Media's motion should be denied "because *one side* of the breached…contract was negotiated, signed, and performed in Idaho…" (Pl.'s Mem. Opp'n Mot.   Dismiss at 7) (emphasis added).   Cheaptrips' arguments allege only that it was *Cheaptrips* itself who made the decisions about major issues over the phone in Idaho, and neglects to mention any decision-making by Media in Idaho. (See Ferry Aff. ¶ 12) (emphasis added).   The evidence suggests that the predominant efforts were made by Cheaptrips, not Media.   Furthermore, the parties acknowledge that the contract was primarily negotiated in New Jersey, not Idaho.   At most, Cheaptrips' arguments demonstrate unilateral activity on the part of Cheaptrips and is insufficient to confer specific jurisdiction over Media.

Cheaptrips next argues that personal jurisdiction is satisfied because it paid Media several hundred thousand dollars with checks drawn on Idaho banks.   Cheaptrips contends that anyone handling the checks would likely know they were doing business with a company in Idaho.   The Court is not persuaded by this argument.   Cheaptrips has failed to provide any authority where checks drawn on a bank from a forum state is sufficient to confer specific jurisdiction.   Second, the fact that a bank has an Idaho name or an Idaho address does not mean that a party is necessarily conducting business with an Idaho company.   The Idaho bank could very well be a subsidiary bank of a larger company or it could be a branch office.   There are a myriad of reasons why receiving a check from an Idaho bank does not necessitate that one is conducting business with an Idaho resident or company.

Cheaptrips also contends that Media would have known it was dealing with an Idaho corporation because telephone conference calls were scheduled with reference to both Eastern and Mountain Standard time zones.  The Court finds that these facts appear to be little more than a convenience to either party.  These contacts are too attenuated to create a substantial connection with Idaho.

The Court does not find that in the context of the "parties' actual course of dealing," Burger King, 471 U.S. at 479, Media was availing itself of any significant Idaho privilege by sending emails or talking over the phone to Cheaptrips' president.  In this case, the activities leading up to the contract included a trip made by Cheaptrips to Media's Virginia offices and business leads submitted to Media by Cheaptrips from its New Jersey operations center.  Media's representation of Cheaptrips' services through telemarketing calls does not establish the privilege of conducting activities in the forum state, where, as here Cheaptrips solicited marketing representation in the Defendant's home state, and because Media takes no affirmative action to promote *its* business within Idaho; Media is promoting Cheaptrips' business.   These contacts by themselves do not establish purposeful availment.  Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990).  First, there was no activity in Idaho in which the Defendants sought to participate. See e.g. Sher, 911 F.2d at 1362 (citing Mayes v. Leipziger, 674 F.2d 178 (2nd Cir. 1982)).

In response to Cheaptrips' arguments, Media asserts that it believed it was doing business with a New Jersey company because all business leads and contacts were received by the New Jersey operations office, and because it sent its business invoices to Cheaptrips' offices in New Jersey.  (Anton Decl.  at 2-3).   In fact, Cheaptrips

acknowledges that "during the period at issue in this litigation invoicing and accounts payable were handled out of our New Jersey offices."  (Ferry Aff. ¶ 9).  Cheaptrips also acknowledges that Anton did in fact "work with New Jersey personnel on routine lead delivery and fulfillment issues." (Ferry Aff. ¶ 10). Cheaptrips also argues that its principal Mr. Ferry and Defendant Anton had executive level dealings over the telephone and through email directed to Mr. Ferry in Idaho.  However, no face to face meetings occured in Idaho.

On the facts presented, it appears that Media accepted payment from an Idaho bank and allegedly made phone calls and sent emails to Cheaptrips' president, Mr. Ferry, who was in Idaho.  However, these limited contacts even taken as true and in the light most favorable to Cheaptrips are insufficient by themselves to confer specific jurisdiction.  See e.g., Emmert Indus. Corp. v. Copeland Equip. Parts, Inc., 2009 WL 2447550, at *6 (D. Or. Aug. 7, 2009) (holding that interactions via phone, email, and invoices by non-resident to forum state were insufficient to establish purposeful availment); Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) (finding contacts by non-resident defendant through use of letters and phone calls to forum state insufficient to establish purposeful availment).

Finally, even if the Court were to assume *arguendo* that Cheaptrips did meet its burden by establishing purposeful availment, the Court finds it fails on the second prong, as discussed next.

### b.  Arising out of Forum-Related Activities

Personal jurisdiction may be exercised over a defendant if the cause of action arises

out of the particular purposeful contact of the defendant with the forum state. <u>Menken</u>, 503 F.3d at 1060 (citing <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199, 1210 (9th Cir. 2006)). To determine whether a plaintiff's claims "arise out of" a defendant's forum-related activities, the Ninth Circuit adopted a "but for" analysis. <u>See</u> <u>Ballard</u>, 65 F.3d at 1500 (citing <u>Shute v. Carnival Cruise Lines</u>, 897 F.2d 377, 381 (9th Cir. 1990), <u>rev'd on other grounds</u>, 499 U.S. 585 (1991)). Thus, specific personal jurisdiction is proper only where "but for" defendant's activities in Idaho, plaintiff's injuries would not have occurred.

In this case, Cheaptrips cannot satisfy the second prong. Cheaptrip's cause of action arises from its contract with Media to provide telemarketing services. However, because Cheaptrips has not established that any transaction with an Idaho resident resulted from Media's alleged bad sales calls, it cannot establish that "but for" Media's conduct Cheaptrips' injury would have occurred. Moreover, the agreement between the parties was to provide telemarketing services on a national level—not just to Idaho. Thus, to the extent that Cheaptrips alleges it was the tortuous conduct of misrepresenting sales offers which caused Cheaptrips to pay Media commissions, it cannot be said that but for Media's calls to Idaho, Cheaptrips injuries would not have occurred. This is likely because Media's calls were not directed to any particular state and would have occurred regardless of calls made to Idaho or elsewhere. To conclude otherwise would not only be speculative but would also "offend traditional notions of fair play and substantial justice." <u>Int'l Shoe Co.</u>, 326 U.S. at 316. Therefore, Plaintiff has failed to establish the second prong of specific personal jurisdiction.

### c. Exercise of Jurisdiction is Reasonable

Because Cheaptrips has not satisfied its burden with respect to general jurisdiction, or the first or second prong for specific jurisdiction, the Court need not analyze the third prong.  However, the Court notes in this particular case the Court would find the exercise of jurisdiction over Defendants would not be reasonable under the third prong.  This finding is primarily based on the fact that all witnesses, except Mr. Ferry, would be located on the east coast in New Jersey or Virginia.  While concluding the motion to dismiss for lack of jurisdiction should be granted in Media's favor, this does not preclude Plaintiff from filing a new complaint within the applicable statute of limitations with a court that can exercise personal jurisdiction over the Media which satisfies the three prong specific jurisdiction analysis.

### B.  Anton Analysis

#### 1.  General Jurisdiction

It is undisputed that Cheaptrips has not established general jurisdiction over Charles Anton.  There are no facts to suggest that Anton has ever been a resident of Idaho or that he made regular trips to Idaho in regards to any business or property.  Accordingly, Plaintiff has not established the contacts with the forum state are continuous, systematic, and substantial to approximate physical presence. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-416 (1984).

### 2.  Specific Jurisdiction

As to specific jurisdiction, the Court also finds Plaintiff has failed to carry its burden of persuasion.  Even assuming Plaintiff has established the purposeful availment prong by Anton's actions negotiating the contact for services with Cheaptrips, the Court finds Plaintiff has not carried its burden on the second prong of the action arising out of forum-related activities.  An officer or director of a business may nonetheless be subject to personal jurisdiction if that individual is a "primary participant" in the alleged wrongdoing. Winery v. Graham, 2007 WL 963252, at *5 (N.D. Cal. Mar. 29, 2007) (citing Calder v. Jones, 465 U.S. 783, 790 (1984)).  Personal jurisdiction based on the primary participant theory is appropriate only if the individual had "control of, and direct participation in the alleged activities." Id. (citing Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985)).

In this case, Mr. Ferry admits that he does not know for sure whether Anton placed any of the alleged wrongful sales calls himself.  (Ferry Aff. ¶ 33). And although Mr. Ferry suggests that Anton was in control of the operations and was "intimately involved on a daily basis with what was going on in 'his' call center," Cheaptrips has failed to show that Anton was the "primary participant." (Ferry Aff. ¶ 33).  Having found neither general or specific jurisdiction over Anton, the action must be dismissed without prejudice as to this Defendant.

### III.  Venue

Notwithstanding the above analysis, even if personal jurisdiction were proper, the Court would agree with Defendants that venue is improper in Idaho.  A federal court is authorized, in its discretion, to transfer proceedings from one division of a district to another, upon motion, consent, or stipulation of all of the parties. 28 U.S.C. § 1404(b). In making a venue determination, a court must at a minimum consider whether a transfer would be (1) convenient to the parties and witnesses, and (2) in the interest of justice. 28 U.S.C. § 1404(a).

In support of their motion to dismiss, Defendants argue that venue lies not with Idaho but with Virginia or New Jersey.  Cheaptrips argues however that litigating the case in Virginia is no more convenient to either party than would be to litigate in Idaho.  A substantial part of the events giving rise to Plaintiff's claims occurred in New Jersey. That is where the contract was negotiated and that is the operations center that Defendants dealt with on a regular basis.  New Jersey would be more convenient to all parties and witnesses than Idaho or Virginia.  Moreover, venue in New Jersey is in the interests of justice based on the limited contact Defendants have with Idaho.  For these reasons, even if the Court was incorrect in its personal jurisdiction analysis, the Court would still have granted the request to change venue.

## ORDER

Based on the foregoing, and having been fully advised in the premises, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Docket No. 5) is **GRANTED**.  Plaintiff's case is HEREBY **DISMISSED WITHOUT PREJUDICE**.

DATED:  **May 12, 2010**

Honorable Edward J. Lodge
U. S. District Judge